AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Allets Career Center, LLC<br>5900 Roche Drive, Suite-610<br>Columbus, Ohio 43229 | )<br>)<br>)  Case No. 20mj24<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: Allets Career Center, LLC., 5900 Roche Dr., Suite-610, Cols, OH 43229 (see Attachmet-A for further description).

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*: See Attachment-B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1347 | Health Care Fraud |
| 18 U.S.C. § 1035 | False Statements Relating to Healthcare Matters |

The application is based on these facts:  See Attached Affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Benjamin R. Unkefer / Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-13-20

*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT – B

## LIST OF PROPERTY TO BE SEIZED

The time frame for the below listed items is **January 01, 2015**, to the **Present** except where otherwise noted.

ALLETS CAREER CENTER, LLC / SUPREME HOME HEALTHCARE, LLC

A.      All patient files of Supreme Home Healthcare, LLC (Supreme).

(Your Affiant knows that it is common practice among medical providers to maintain all-inclusive patient files, which may reference and include documents and information which pre-date the range of items sought in this search warrant. Such documents, if they exist, may be critical in determining whether CHHCS fraudulently billed health insurance programs.  In order to maintain the integrity of the patient files, your affiant seeks to seize complete patient files, which may include documents with dates earlier than the range requested in this attachment.)

B.      All business/medical records related in any way to all clients of Supreme and Allets Career Center, LLC (Allets) including, without limitation, the following type of records; client charts, All Service Plans, Plans of Care, 485 forms, OASIS reports, assessment reports, therapy notes, nursing notes, missed nursing visit forms, physician notes, home health aide timesheets/logs, client complaints, prescription records, original client or referral source listings, client information sheets containing demographic information, appointment records, daily logs, and business calendars.

C.      All billing records for Allets and Supreme including but not limited to; correspondence to and from Medicaid and other insurers, billing files, patient account records, client account records, claim forms, insurance forms, invoices and

claims, remittance advice statements, warrant journals, cash receipt books and/or ledgers, checks/warrants, and:

    i. Records relating to billing including letters, faxes, notes, and explanation of benefits forms; and

    ii. Records and/or ledgers and/or journals that may reveal, indicate or contain information pertaining to Medicaid or other insurers' billings; and

    iii. Manuals, notebooks, billing code lists, and memoranda used for billing purposes.

D.    Any and all correspondence and memorandums for Allets and Supreme with Medicaid, Medicaid HMO's, Medicare, Ohio Department of Health, and private insurance companies, patients, legal guardians of patients, and contractors including but not limited to provider applications, electronic fund transfers, change of address forms, inspections, exclusion notices, manuals, notes, memos, meetings of minutes, and overpayment or repayment notices.

E.    Personnel records for Allets and Supreme including but not limited to CPR certifications, payroll, employment, training and training certificates, background checks, contracts, bonus plans, policy manuals, training manuals, and disciplinary actions, for all employees, owners, shareholders, corporate officers, and directors of CHHCS.

## BANKING RECORDS

F.    All banking and financial records for, or associated with: Allets Career Center, LLC; Supreme Home Healthcare, LLC; and Stella B. Ayensu, SSN 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; including but not limited to:

    i.  Checking Account(s);

        Signature cards, monthly statements, deposit tickets, credit items

        Cancelled checks, items of deposit and withdrawal; and

    ii.  Saving Account(s);

        Signature cards and application forms, monthly account ledgers,

        Deposit tickets and other credit items, withdrawal slips, deposit items;

        And

    iii.  Clubs, Business and Other Open Account(s);

        Signature cards and application forms, monthly account ledgers,

        Deposit tickets and other credit items, withdrawal slips, deposit items;

        And

    iv.  Safe Deposit Box;

        Signature cards, contracts/leases, access tickets/ledgers; and

    v.  Loans;

        Loan applications (made or rejected), financial statements, monthly

        Account ledgers, correspondence, credit files, refinance records,

Collection files, and memorandums; and

vi. Currency Transaction Reports/Suspicious Activity Reports;

All documentation relating to the transactions that generated CTRs and SARs including but not limited to account records, teller records, and correspondence; and

vii. Currency Exchanges;

All documents relating to the exchange of currency including but not limited to correspondence, teller records, and vault records; and

viii. Time Certificates of Deposit;

Certificates or other evidence of payment, account ledger or records reflecting original date, amount, term, rate, registered owner(s), and other conditions of negotiability, signature and application forms, treasury notes; and

ix. Cashier's Checks and Money Orders;

Cashier's checks or money orders purchased or received by those named above; and

x. Wire Transfers;

Transfer of funds, foreign or domestic, in, out, by, or on behalf of those named above; and

    xi.  Credit Cards;

        Applications, monthly statements, credit card slips; and


    xii.  Financial/Banking Correspondence;

        All correspondence to, from, or on behalf of those named above.


## FRUITS AND INSTRUMENTALITIES OF THE CRIMES

G.    Currency over the amount of $1,000.00 reasonably believed to be the proceeds of the illegal activity described in the affidavit.


## COMPUTERS AND ELECTRONIC MEDIA STORAGE

H.    Any computer or digital storage medium whose seizure is authorized by this warrant, and any computer or digital storage medium that contains or in which is stored records or information whose seizure is authorized by this warrant (hereinafter "Computer") including:


    i.  Evidence of who used, owned, or controlled the Computer at the time the events described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat", instant messaging logs, photographs, and correspondence;  and


    ii.  Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software; and

iii. Evidence of the lack of such malicious software; and

iv. Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence; and

v. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer; and

vi. Evidence of the times the Computer was used; and

vii. Passwords, encryption keys, and other access devices that may be necessary to access the Computer; and

viii. Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer; and

ix. Records of or information about internet protocol addresses used by the Computer; and

x. Records of or information about the Computer's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses; and

xi. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); and handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

As used above, the term "Computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

As used above, the term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## ATTACHMENT – A
## LOCATIONS TO BE SEARCHED

ALLETS CAREER CENTER, LLC

1.     Allets Career Center is further described as follows: Allets Career Center is located at 5900 Roche Drive, Suite 610, Columbus, Ohio 43229.  5900 Roche Drive is a large multi-story office building located just South of State Route-161 and West of Interstate-71. The building is a multi-story structure.  The exterior is brown brick with windows placed regularly along the exterior of the edifice.  The main entrance to the building is through glass doors which are covered by a black awning.  On the awning is printed "5900 Roche Drive" and "Enterprise Place".

(see below photographs)

Allets business is located in suite-610 at 5900 Roche Drive.  The entrance to Suite-610 is reached via stairs and an elevator located in the building.  The door into Suite-610 is a solid brown door with narrow windows located to the left and right of the door.  To the right of the door, is a sign which reads:

Allets Career Center

Suite 610

Call: 614-327-3972

(see below photographs)









IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF:

THE SEARCH OF;                                        :
ALLETS CAREER CENTER, LLC                             :
5900 Roche Drive, Suite 610, Columbus, Ohio 43229     :

      AND

SUPREME HOME HEALTHCARE, LLC.                          :
5900 Roche Drive, Suite 614, Columbus, Ohio 43229     :

*20 mj 24*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

The undersigned, Benjamin R. Unkefer, after first being duly cautioned and sworn states the following:

## I.  Affiant's Background and Qualifications

1.     I, Benjamin R. Unkefer, hereinafter referred to as the Affiant, am a Special Agent employed by the United States Department of Health and Human Services (DHHS), Office of Inspector General (OIG), Office of Investigations (OI).  I have been so employed since April of 2002.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

1

2. As part of my duties I am authorized to conduct investigations, audits and inspections in connection with the administration and enforcement of laws, regulations, orders, contracts and programs in which the U.S. Department of Health and Human Services (DHHS) is, or may be, a party of interest, and perform other duties on behalf of the Secretary of the Department of Health and Human Services. My chief responsibility is the investigation of fraud involving Federal Health Care Programs. As a special agent with the DHHS-OIG-OI, I have received basic criminal investigator training as well as specialized training in the investigation of fraud and financial crime.

3. Previously, I was employed as a Special Agent with the Ohio Attorney General's Office, Medicaid Fraud Control Unit (MFCU). My primary responsibilities, at the federal and State levels, during this period of over twenty (20) years has been the investigation of criminal fraud against the health care programs commonly known as Medicare and Medicaid.

4. Additionally, I served in the United States Navy as an enlisted Naval Aircrewman and Cryptologic Technician/Direct Support Operator. As such, I was entrusted with a top-secret, code-word, security clearance with access to specially compartmented information. As a cryptologic technician and Naval aircrewman, I was tasked with the real time collection and analysis of overseas intelligence data.

5. I have participated in the investigation of the described offenses. The statements in this affidavit are based in part on my personal participation in this investigation through interviews with witnesses, surveillance, analysis of documents collected during the course of the investigation, and information and insight given

to me by other participating investigators with the following agencies: The Ohio Attorney General's Office – Medicaid Fraud Control Unit (MFCU).

6. Because this affidavit is submitted for the purpose of securing warrants for the search of specific premises that this investigation has identified, I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that I believe to be necessary to establish the required foundation for issuance of the requested warrants.

## II. Case Initiation

7. During the investigation of Dr. Nur Badshah by DHHS-OIG and the MFCU (the Dr. Badshah investigation was a separate inquiry unrelated to Allets Career Center and Supreme Home Healthcare) it was determined Allets Career Center LLC (Allets) & Supreme Home Healthcare, LLC (Supreme), both co-located at 5900 Roche Drive, Columbus, Ohio 43229, engaged in the falsification of a required home health aide training course.

8. Specifically, on 04/21/2017, a cooperating witness (CW) met with the owner of a local home health agency. The CW met with the owner, in part, to arrange for training required for the CW to become a certified home health aide. Obtaining training for the CW was necessary to facilitate the investigation of Dr. Badshah. At this time, the investigating agents were unaware of Allets /Supreme. The owner of the home health agency instructed the CW to travel to Supreme in order to receive the training. The training is required under the Ohio Administrative Code (OAC) for all aides providing services to Medicaid recipients (see paragraph 25). The CW then drove to Supreme at 5900 Roche drive. The CW entered suite 614, where

3

Supreme is located. After a short wait, the CW was taken into a back office at Supreme by a man calling himself "Eben". The man was later identified (probable) as Ebenezer G. Osei. Osei is a Registered Nurse (RN) with the State of Ohio, RN# 366688, active status. Osei took the CW into an office. The CW informed Osei they had cared for family members but the CW did not state they were an aide or had any previous aide training. Osei then asked the CW a series of questions related to aide services. The questions took approximately seven (7) minutes. At the conclusion of the questioning, Osei printed and signed an Allets' 'Certificate of Successful Completion' verifying the aide "Successfully completed a **sixty (60) hour** (emphasis added) Home Health Aide Program" (see Attachment-C(i)).

9.     Based on Allets' and Supreme's issuance of the false certificate, on 09/17/2019 an investigation of Allets & Supreme was initiated.

### III.  Identification and Descriptions of the Locations to be Searched

10.    Based upon the information set forth below, I have probable cause to believe and do believe that certain evidence supporting violations of Title: 18 U.S.C. § 1347, Health Care Fraud;  Title 18 U.S.C. § 1035, False Statements Relating to Health Care Matters; showing: Allets Training Center, LLC and Supreme Home Healthcare, LLC, by knowingly and willfully executing, and attempting to execute, a scheme and artifice to defraud health care benefit programs, as defined under 18 U.S.C. 24(b), including the Ohio Medicaid program, and obtaining, by means of false and fraudulent pretenses, representations, and promises, money and property owned and controlled by such health care benefit programs, in connection with the delivery and payment for health care benefits, items and services; is presently being maintained or stored at: (1) - the business offices of Allets Career Center, LLC located at 5900

Roche Drive, Suite-610, Columbus, Ohio 43229; and (2) - Supreme Home Healthcare, LLC located at 5900 Roche Drive, Suite 614, Columbus, Ohio 43229.

Location-1.

ALLETS CAREER CENTER, LLC:

11.     Allets Career Center is further described as follows: Allets Career Center is located at 5900 Roche Drive, Suite 610, Columbus, Ohio 43229. 5900 Roche Drive is a large multi-story office building located just South of State Route-161 and West of Interstate-71.

The building is a multi-story structure. The exterior is brown brick with windows placed regularly along the exterior of the edifice. The entrance to the building is through glass doors which are covered by a black awning. On the awning is printed "5900 Roche Drive" and "Enterprise Place".
(see Attached photographs, Attachments C(ii) & C(iii))

Allets business is located in suite-610 at 5900 Roche Drive. The entrance to Suite-610 is reached via stairs and an elevator located in the building. The door into Suite-610 is a solid brown door with narrow windows located to the left and right of the door. To the right of the door, is a sign which reads:

Allets Career Center

Suite 610

Call: 614-327-3972

(see Attached photographs, Attachments C(iv) & C(v))

Location-2

SUPREME HOME HEALTHCARE, LLC:

12.     Supreme Home Healthcare, LLC is further described as follows: Supreme Home Healthcare, LLC is located at 5900 Roche Drive, Suite-614, Columbus, Ohio 43229 (see above for description of 5900 Roche Drive).

Their business office inside 5900 Roche Drive is located adjacent to Allets Career Center. In Suite-614. The entrance to Suite-614 is via a brown door with a large window located in the center of the door. A large round business seal is prominently displayed in the center of the door. The seal shows a white dove in the center and has lettering around the perimeter. The lettering states "Supreme Home Healthcare, LLC / "A Step Ahead in Caring". To the left of the door is a sign which identifies the suite as 'Suite 614'.

(see Attached photograph, Attachment C(vi))


## IV. Corporate Backgrounds

### ALLETS CAREER CENTER, LLC

13.     Allets Career Center, LLC filed for its Articles of Domestic Organization for a Limited Liability Corporation with the Ohio Secretary of State on 09/22/2014. Its current status with the Ohio Secretary of State is listed as "Active". On Allets' application for LLC status with the Ohio Secretary of State, **Stella B. Ayensu** (emphasis added) was listed as the company's statutory agent.

14.     Allets is, to the best of your Affiant's knowledge, not a registered Medicaid provider. Instead, Allets appears to be a training center for State Tested Nursing

Assistants (STNA)s / home health aides. On Allets' LLC application with the State of Ohio, no business purpose was listed. However, internet searches for 'Allets Career Center' return results listing the company as a trainer for STNAs.

## SUPREME HOME HEALTHCARE, LLC

15.     Supreme Home Healthcare's Medicaid 'Provider Revalidation Application' was signed on 09/01/2017 by **Stella Ayensu** (emphasis added). The application listed Supreme's business address as 5900 Roche Drive, Suite 614, Columbus, Ohio 43229. The application also identified Stella Ayensu as the "Direct Owner" and "Board Member". Supreme's Medicaid provider number is 0076152. The company has been paid approximately $1,547,450.45 by the Ohio Medicaid program, and its components, from 01/01/2019 to present. Supreme's Ohio Medicaid provider number became active on 11/25/2012.

16.     Additionally, in Supreme's Provider Revalidation Application the company agreed to "Maintain all records necessary and in such form so as to fully disclose the extent of services provided and significant business transactions. The provider will maintain such records **for a period of six years** (emphasis added) from the date of receipt of payment based upon those records or until any initiated audit is completed, whichever is longer."

## V.   The Medicaid Program

17.     Medicaid is a federal health care benefit program designed to provide medical services, equipment, and supplies to the poor pursuant to the Social Security Act (Title 42, United States Code, Section 1396, et seq.). Medicaid is a health care

benefit program as defined in 18 U.S.C. § 24(b). Approximately 63% of the funding for the Ohio Medicaid program is supplied by the United States Department of Health and Human Services. The Medicaid program is administered by the State of Ohio, through the Ohio Department of Medicaid (ODM). ODM pays Medicaid claims submitted to it by valid Medicaid providers.

18.     A participating Medicaid provider is a person or business, such as Supreme, who agrees to (1) provide the service, (2) submit the claim, and (3) accept as payment in full the amount paid by the Ohio Medicaid program. The provider signs a Medicaid participation agreement, which requires them to keep records necessary to fully disclose the services provided to Medicaid patients. To receive Medicaid reimbursement for covered services, the provider submits a Health Insurance Claim form (HCFA 1500) by mail or electronically submits billing data to ODM, which pays the provider either by mail or electronic transfer.

19.     Medicaid pays participating health care providers on the basis of reasonable charges for covered services provided to beneficiaries. They assign to each provider a unique billing Provider Identification Number (PIN). Providers agree to know Medicaid reimbursement policies, which are communicated via regulations, manuals and newsletters.

20.     Medicaid providers agree to bill only for services actually rendered that are medically necessary to diagnose and treat illness or injury and for which the provider maintains adequate documentation. Medicaid currently requires health care providers to **retain records of services for six (6) years from the date of payment** for such services.

8

## VI. Medical Coding

21.     The American Medical Association assigns and publishes numeric codes, known as the Current Procedural Terminology (CPT) and HCFA Common Procedure Coding System (HCPCS) codes. The codes are a systematic listing, or universal language, used to describe the procedures and services performed by health care providers. The procedures and services represented by the codes are health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b). They include codes for home health aide services, home health nursing services, physical therapy services, and others.

## VII. Home Health Program

22.     Home health services are Medicaid State Plan services that are provided on a part-time and intermittent basis to Medicaid recipients of any age. According to the Ohio Administrative Code 5160-12-01(A), covered home health services include home health nursing, home health aide, and skilled therapies. Ohio Medicaid home health agencies must first be certified by Medicare before they can submit claims to the Medicaid program.

23.     As stated in the Ohio Administrative Code 5160-12-03(B)(4), Medicare certified home health agencies must maintain documentation on all aspects of services provided in accordance with this chapter. All documentation must be complete prior to billing for services provided in accordance with this chapter. This includes but is not limited to: Clinical records (including all signed orders)…Time keeping records that indicate the date and time span of the services provided during a visit, and the type of service provided.

24.     The Ohio Administrative Code 5160-12-01(G)(2) states that a "home health aide" is a service that requires the skills of and is performed by a home health aide employed or contracted by the accredited home health agency providing the service. The home health aide cannot be the parent, step-parent, foster parent, or legal guardian of a patient who is under eighteen (18) years of age, or the patient's spouse. Home health aide services are provided and documented in accordance with the patient's plan of care, must be provided in a face-to-face encounter, must be medically necessary, must be necessary to facilitate the nurse or therapist in the care of the patient's illness or injury or help the patient maintain a certain level of health in order to remain in the home setting. Home health aide services can include, but are not necessarily limited to, bathing, dressing, grooming, hygiene, including shaving, skin care, foot care, ear care, hair, nail and oral care, that are needed to facilitate care or prevent deterioration of the patient's health, changing bed linens of an incontinent or immobile patient, feeding, assistance with elimination including administering enemas, routine catheter care, assistance with ambulation, changing position in bed, and assistance with routine maintenance exercises and passive range of motion exercises.

25.     Additionally, as per Ohio Administrative Code (OAC) 5160.12.01 (G)(2)(a) (Fee for Service Medicaid); (a) Are performed within the home health aide's scope of practice as defined in 42 C.F.R. 484.36 (October 1, 2016). The Code of Federal Regulations (CFR) 42 C.F.R. 484.36, states in part, that home health aides must meet the following training requirements:

(a)*Standard: Home health aide training*---

(1)*Content and duration of training.* The aide training program must address each of the following subject areas through **classroom and supervised practical**

10

**training totaling at least 75 hours**, (emphasis added) with at least 16 hours devoted to supervised practical training. The individual being trained must complete at least 16 hours of classroom training before beginning the supervised practical training.

## VIII.  Facts Supporting the Affidavit
### HEALTH CARE FRAUD

26.    Because this affidavit is submitted for the purpose of securing warrants for the search of specific premises that this investigation has identified, I have not included each and every fact that has been revealed through the course of this investigation.  I have set forth only the facts that I believe to be necessary to evaluate the legal basis for issuance of the requested warrants.

27.    My investigation of Allets and Supreme has been assisted by the following agencies: The Ohio Attorney General's Office – Medicaid Fraud Control Unit; and The United States Department of Health & Human Services – Office of Inspector General – Office of Investigations.

*Initial Individual Receives Allets' Aide Training*

28.    As previously outlined in paragraph 8, a confidential witness (CW), reported to the offices of Supreme Home Healthcare, LLC on 04/21/2017, in order to received training required by all aides providing services to Medicaid patients (please see Paragraph 25).  The CW was taken into a room by RN Ebenezer Osei who then asked the CW approximately seven (7) minutes of questions related to home healthcare.  After answering the questions, RN Ebenezer Osei utilized a Supreme printer and computer system to print an Allets 'Certificate of Successful Completion' for the CW (see Attachment C(i)).  Osei signed the certificate and

handed it to the CW. The certificate stated the CW "Successfully completed a sixty hour Home Health Aide Program...The presentation of this certificate verifies that this individual has demonstrated the ability to perform all relevant Home Health Aide responsibilities". Thereby fulfilling, falsely, one (1) of the main requirements under the Ohio Administrative Code (OAC) to provide aide services.

*Follow-up Undercover Allets' Training Visit*

29.     Then on 11/12/2019, at approximately 10:44am, two (2) undercover (UC) agents from the Ohio Attorney General's Office – Medicaid Fraud Control Unit (MFCU), arrived at Supreme's offices located in suite-614 at 5900 Roche Drive. The UC agents informed the Supreme receptionist they were there for the home health training class. The UC agents were: greeted by RN Ebenezer Osei; and the UC agents were then taken next door to Allets, suite-610, for the training.

30.     When the UC agents entered the Allets training area they met another black female and black male who were also there to receive the aide training class. Both of these individuals were from New Millenium Home Health.

31.     At approximately 11:23am, the instructor, Stella Ayensu, entered the class and introduced herself. Ayensu then played several five (5) to seven (7) minute length videos for the class. Ayensu told the class the course was three (3) to three-and-a-half (3.5) hours in length. Ayensu further stated that after the videos there would be a twenty (20) question test. And you could miss no more than two (2) questions on the test.

32.     After watching the video on hand washing the class was taken to another room and instructed to wash their hands while Ayensu watched and gave instructions.

33.     After watching the video on re-positioning a patient in bed, the class was instructed, as a group, to re-position a dummy in a hospital bed located in the classroom.

34.     At approximately 1:05pm, Ayensu handed out a paper for each student to write their name at the top and return the paper to her. Presumably for their certificates of completion. Ayensu then handed out the test comprised of twenty (20) questions.

35.     Ayensu then stated there was a CPR course after the home health aide training. Ayensu advised the class the CPR course was thirty (30) minutes and was taught by an independent contractor. According to information accessed by your Affiant on the American Red Cross website, CPR training typically takes several hours to complete.

36.     Ayensu then informed the class she was a registered nurse and owned Supreme Home Healthcare. Stella Ayensu stated she taught classes on Tuesdays and Fridays. Ayensu then stated the course is an all week course but she breaks it down to focus just on the needed topics, thereby allowing her to complete the course in a few hours. Ayensu then stated she did not expect students to sit through seven (7) hours of training per day for aide training. Stella Ayensu then stated the STNA program was a two (2) week course.

37.    Ayensu then informed the class she would send the certificates of completion to their respective home health companies after the companies paid for the training.

38.    The UC agents then departed, terminating the undercover activity at approximately 1:42pm. The approximate total time spent by the UC agents at Allets / Supreme was two (2) hours and fifty-eight (58) minutes.

*Payment for Undercover Allets' Training*

39.    On 11/15/2019, a local home health agency owner, arrived at the offices of Supreme Home Healthcare at 5900 Roche Drive, Suite-614, Columbus, Ohio 43229. The purpose of the owner's visit was to pay Stella Ayensu for the training received by the UC agents on 11/12/2019.

40.    The owner entered Supreme's offices and met with Stella Ayensu. Ayensu took the owner into her office located inside Supreme's spaces. In her office, the owner paid Ayensu three-hundred (300) dollars in cash for the aforementioned training. Ayensu also showed the owner the training certificates for the UC agents.

41. During the transaction, Ayensu stated "You see the dates that I made it?". Referring to the UC agents' training certificates. The certificates reported class dates for the UC agents starting on 11/7/2019 and ending on 11/12/2019 (see Attachment C(vii)). The start and end dates recorded a six (6) day training period, despite the actual training lasting less than three (3) hours on one (1) day. Ayensu then stated, "I don't do this for anybody that walks in. (Unintelligible) Because technically it's supposed to be a one (1) week class…You can't wait for one

week…So this is what I do for the people that I know…Basically the students themselves they don't know (that it is supposed to be a multi-day class)".

42.    Ayensu then informed the owner the paperwork she was providing, verified the training received by the UC agents, "For verification of HHA (home health aide) law". The certificates for the UC agents appeared to be signed by Stella Ayensu, RN and listed Allets Career Center at 5900 Roche Drive, Suite 610. The owner then departed with the training certificates.

*Summary of Investigation*

43.    In 2017, Allets/Supreme fraudulently certified a confidential witness as a trained aide. During the incident with the CW, two (2) other women were waiting in the lobby of Supreme apparently waiting to be certified as aides. In 2019, two (2) MFCU undercover agents were fraudulently certified by Stella Ayensu as having completed a required two (2) week training course. The agents were fraudulently certified along with two (2) additional persons in the class. Additionally, during the class, Stella Ayensu stated she ran classes each Tuesday and Friday.

44.  Due to Allets', Supreme's, and Stella Ayensu's observed actions in 2017 and 2019, your Affiant has probable cause to believe and does in fact believe that Allets, Supreme, and Stella Ayensu have engaged in an ongoing course of criminal activity, since at least April of 2017, with the activity reasonably beginning some time prior to 2017, and continuing to the present. The activity in question being, specifically, that Allets, Supreme, and Stella Ayensu; knowingly issued false aide training certificates, on a weekly or near weekly basis, in return for cash payments, thereby causing large numbers of un-qualified aides to be falsely certified in the

Central Ohio area. It is reasonable to assume these bogus certifications have; resulted in large numbers of false claims, for unqualified aide services, which were subsequently submitted to the Ohio Medicaid program for payments. Furthermore, your Affiant states it is reasonable to believe, and does in fact believe, that this criminal activity also includes the issuance of false aide training certificates for home health aides at Supreme Home Healthcare LLC. And lastly, your Affiant asserts; the practice of issuing false training certificates, in conjunction with sub-standard training, not only caused the submission of false claims to the Medicaid program, but has also endangered the health and safety of numerous Medicaid recipients currently receiving home health services in Central Ohio.

## IX. Probable Cause for Items to Be Seized

45.     Based upon the facts set forth above, your Affiant has probable cause to believe and does believe that evidence outlining Allets' and Supreme's various schemes is currently present at: (1) the offices of Allets Career Center LLC, 5900 Roche Drive, Suite-610, Columbus, Ohio 43229; and (2) Supreme Home Healthcare LLC, 5900 Roche Drive, Suite-614, Columbus, Ohio 43229.

*Allets' and Supreme's Medical Records and Business Documents*

46.     Based upon my knowledge, experience and training, I know that medical providers, such as Allets and Supreme, keep and maintain documents related to their medical patients, daily business activities, and billings for services provided. I seek to seize any and all such documents and records (in whatever form stored – hard copy or by electronic media) relating to Allets and Supreme, located at either their places of business including records listed in Attachment-B, for the time period January 01, 2015, through the present.

47.    Supreme signed their Medicaid provider agreements in which they agreed to maintain records necessary to substantiate Medicaid billings for a period of six (6) years.  Your Affiant knows, through his training and experience, these records are typically maintained at the place of business.  Additionally, the investigation has shown that Supreme and Allets share joint ownership through Stella Ayensu.  And the businesses appear to operate as a contiguous entity.  Sharing resources such as printers, computers, and office spaces.

48.    It is common practice among medical providers to maintain all inclusive patient files, which may reference and include documents and information which pre-date the range of items sought in this search warrant.  Such documents, if they exist, may be critical in determining whether Allets fraudulently billed Medicaid and other health insurance programs.  In order to maintain the integrity of the patient files, your Affiant seeks to seize complete files, which may include documents with dates earlier than the range requested in the attachments.

49.  I intend to implement the following procedures with regard to the seizure of patient files.  Stella Ayensu and the management of Allets and Supreme will be notified that copies of patient files will be made available to them on an "as needed" basis.  If Allets or Supreme need a patient file they can contact a member of the investigative team to obtain a copy of the medical file.  Should an individual patient need access to a medical file, the patient may contact a member of the investigative team during normal business hours.  Upon submission of a valid patient release form to a member of the investigative team, the patient will be provided a copy of the medical file.  If the patient requests a medical file through either Allets or Supreme then the procedures set forth earlier in this paragraph will apply.  The following number should be called in the event that medical files are needed: (614) 469-2033.

*Computers, Electronic Storage, and Forensic Analysis*

50.    As described above and in ATTACHMENT-B, this application seeks permission to search for records that might be found at the offices of Allets and Supreme, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

<u>Probable Cause</u>

51.    Affiant's training and experience have shown that individuals and businesses typically use computers to facilitate record keeping and to record business transactions. Therefore, your Affiant believes that Allets, Supreme, and Stella Ayensu use computers to facilitate their illegal activities. I submit that if a computer or electronic medium is found on the premises, there is probable cause to believe those records will be stored in that computer or electronic media, for at least the following reasons:

i.    Based on my knowledge, training, and experience, as well as consultation with other law enforcement agents, I know that home health agencies often use electronic databases and/or systems to store patient records, employee and payroll records, financial records, as well as records of insurance payments. These records are also required to effectively operate a health care agency, maintain customer service, and comply with local, state and federal tax obligations.

ii.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

iii.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

iv.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

v.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

## Forensic Evidence

52.    As further described in ATTACHMENT B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium related to Alllets and Supreme:

i.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

ii.    Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

iii.    A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

iv.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

v.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

<u>Necessity of Seizing or Copying Entire Computers or Storage Media</u>

53.  In most cases, a thorough search of the premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

i.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things

22

described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

ii.    Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.   The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

iii.   Variety of forms of electronic media.   Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

### Nature of Examination

54.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a

23

hard drive to human inspection in order to determine whether it is evidence described by the warrant.

55.    Because it is possible that the premises of Allets and Supreme will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

56.    Allets and Supreme are functioning corporations that may also conduct legitimate business. The seizure of the companies' computers may limit their ability to conduct legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably.    Reasonable execution will likely involve a determination on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Execution will be limited to those computers that are known to be used by Allets' and Supreme's owners and employees, and to the items listed on ATTACHMENT – B.  Where appropriate, agents will copy data, rather than physically seize computers, to reduce the extent of disruption. If Allets' and Supreme's owners or their employees so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the companies' legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it. If the agents are unable to copy the data on site, the seized computers will be returned to Allets and Supreme as soon as they can be copied.

24

57. Therefore, as outlined above, your Affiant believes probable cause exists that: Allets Career Center, LLC and Supreme Home Healthcare, LLC; utilize computer hardware, software, related documentation, passwords, data security devices, and data as part of their schemes and constitute a means of committing it. As such, these items are instrumentalities, fruits and evidence of the violations designated.

58.     Accordingly, I seek to search and seize the computers and computer related objects and data located at: (1) Allets Career Center, LLC at 5900 Roche Drive, Suite-610, Columbus, Ohio 43229; and (2) Supreme Home Healthcare, LLC at 5900 Roche Drive, Suite-614, Columbus, Ohio 43229; which are listed In ATTACHMENT-B as instrumentalities, fruits, or evidence of crime.


## X. REQUEST FOR SEALING

59.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online, criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Further Affiant Sayeth Naught.

Benjamin R. Unkefer

Special Agent

U.S. Dept. of Health & Human Services

Office of Inspector General


Sworn to and subscribed to me

this 13 day of January, 2020


United States Magistrate Judge

## ATTACHMENT – A
## LOCATIONS TO BE SEARCHED


ALLETS CAREER CENTER, LLC

1.     Allets Career Center is further described as follows: Allets Career Center is located at 5900 Roche Drive, Suite 610, Columbus, Ohio 43229.  5900 Roche Drive is a large multi-story office building located just South of State Route-161 and West of Interstate-71. The building is a multi-story structure.  The exterior is brown brick with windows placed regularly along the exterior of the edifice.  The main entrance to the building is through glass doors which are covered by a black awning.  On the awning is printed "5900 Roche Drive" and "Enterprise Place".

(see below photographs)


Allets business is located in suite-610 at 5900 Roche Drive.  The entrance to Suite-610 is reached via stairs and an elevator located in the building.  The door into Suite-610 is a solid brown door with narrow windows located to the left and right of the door.  To the right of the door, is a sign which reads:

Allets Career Center

Suite 610

Call: 614-327-3972

(see below photographs)









## ATTACHMENT-C:

C(i). Copy Allets' Certificate of Successful Completion given to the Confidential Witness.

---

# Certificate of Successful Completion

*This is to verify that*

*Successfully completed a sixty hour Home Health Aide Program*

*on this* 21 *day of* APRIL , 2017

*Presented by*

## ALLETS CAREER CENTER, LLC

*The presentation of this certificate verifies that this individual has demonstrated the ability to perform all relevant Home Health Aide responsibilities.*

_____ RN          04/21/2017

*Signature of Program Instructor*

C(ii).  Exterior view of 5900 Roche Drive.



C(iii). Entrance to 5900 Roche Drive.



C(iv). Entrance to Allets Career Center.



C(v). Allets Career Center door sign.

